1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KAR NUT PRODUCTS CO., Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 337,
Defendant-Appellee.
 No. 92-2084.
 United States Court of Appeals, Sixth Circuit.
 Aug. 10, 1993.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 91-74585; Zatkoff, J.
 E.D.Mich., 798 F.Supp. 1303.
 AFFIRMED.
 BEFORE: MARTIN, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Kar Nut Products Co. filed this action under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, and the provisions of the United States Arbitration Act, 9 U.S.C. Sec. 1, et seq., seeking to vacate an Arbitrator's award reinstating Simone Chapman to her former position with the Company. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 337, filed a counterclaim to enforce the arbitrator's award. After hearing cross-motions for summary judgment, the district court granted summary judgment in favor of Local 337, denied summary judgment to Kar Nut, and enforced the award of the Arbitrator reinstating Chapman to her position at Kar Nut. Kar Nut now appeals the district court's judgment. We affirm.
 
 
 2
 Kar Nut and Local 337 were parties to a collective bargaining agreement which covered the period from September 1, 1988 through August 31, 1991. Article VII of the agreement established a grievance and arbitration procedure for all complaints arising during the term of the agreement. Section 2(C) of Article VII provided, "... all settlements made in the grievance procedure, including the decision of the arbitrator, shall be final and binding on all parties, including the employees involved." The agreement also provided terms and conditions for the discharge of employees. In Article VII, the agreement required that "[t]he Employer shall not discharge or suspend any employee without just cause...." Article XXII of the agreement established management rights, which established that Kar Nut, "[e]xcept as otherwise limited by a specific provision of the Agreement, ... [shall have] the right to establish, maintain, and enforce reasonable work rules which shall be among the causes for discipline and discharge." Pursuant to Article XXII, Kar Nut established work rules to define infractions and establish punishments for bargaining unit employees who committed an infraction. Work Rule 19 stated, "[r]efusal to follow orders or instructions of [sic] supervisor can result in immediate discharge." (emphasis added).
 
 
 3
 On August 31, 1990, Simone Chapman, a Kar Nut employee covered by the collective bargaining agreement, was assigned to bulk packing, which involved stacking cases weighing twenty-five pounds each. After Chapman's morning break, a substitute supervisor directed Chapman to return to bulk packing. Chapman refused, stating that she had completed two hours on this assignment and that her regular supervisor did not require female employees to work in bulk packing in excess of two hours. According to the substitute supervisor, Chapman received a warning that she could lose her job if she did not return to work, but Chapman still refused to return to bulk packing. The supervisor reported Chapman for her refusal to return to work, and Kar Nut suspended Chapman while investigating whether she had violated Work Rule 19 and whether any mitigating circumstances were relevant to any punishment Chapman might receive. Kar Nut subsequently terminated Chapman for failing to follow orders of her supervisor.
 
 
 4
 Chapman filed a grievance with the union over her discharge, and Kar Nut and Local 337 agreed to submit the grievance to arbitration pursuant to Article VII of the collective bargaining agreement. At the arbitration hearing, Chapman testified that she understood that a company rule existed under which females were not to work in bulk packing in excess of two hours. Chapman also testified that a co-worker, Barb Lundy, had informed her of this rule and that her regular supervisor, Chester Taras, enforced the two-hour rule. Steward Patricia Schultz testified that the rule had developed several years earlier with Taras after the female employees explained to Taras that twenty-five pounds was too difficult to lift after two hours. Taras then agreed that the females could rotate work on bulk packing. Schultz also testified that several females had protested working in bulk packing for longer than two hours and that the supervisors had heeded the protests. Schultz added, however, that some female employees had worked longer than two hours in the past. Lundy testified that Chester Taras, Chapman's regular supervisor, regularly enforced the two hour rule. The two hour rule, however, was not part of the collective bargaining agreement.
 
 
 5
 After the hearing, the arbitrator noted that the collective bargaining agreement prevented Kar Nut's suspension or discharge of any employee without just cause. The arbitrator reasoned that "just cause" incorporated two elements: (1) a proven offense, and (2) a reasonable and appropriate penalty. Using this two-part analysis, the arbitrator concluded that Chapman had violated Work Rule 19 by refusing to follow orders of a supervisor. The arbitrator, however, refused to enforce Kar Nut's termination of Chapman because he found that termination in this instance was not reasonable and appropriate. Thus, the arbitrator ordered Kar Nut to reinstate Chapman to her position without backpay or benefits for the period in which she was not working.
 
 
 6
 Kar Nut filed this action under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, and the provisions of the United States Arbitration Act, 9 U.S.C. Sec. 1, et seq., seeking to vacate the arbitrator's award reinstating Chapman. Local 337 filed a counterclaim to enforce the arbitrator's award. The district court granted summary judgment in favor of Local 337 and enforced the arbitrator's award, finding that the arbitrator's decision derived its essence from the express terms of the collective bargaining agreement. Kar Nut appeals, arguing that the arbitrator ignored the plain language of the collective bargaining agreement, and that the arbitrator made an erroneous factual finding. Thus, Kar Nut argues that the district court's judgment enforcing the arbitrator's award is incorrect, and that the award should be vacated. We disagree.
 
 
 7
 "Arbitration as a means of dispute resolution is highly favored and courts have long refrained from involving themselves in the merits of an arbitration award." International Bhd. of Elec. Workers, Local 429 v. Toshiba America, Inc., 879 F.2d 208, 209 (6th Cir.1989). Accordingly, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." Lattimer-Stevens Co. v. United Steelworkers of Am., AFL-CIO, Dist. 27, Sub-Dist. 5, 913 F.2d 1166, 1169 (6th Cir.1990). Our deference to the judgments of arbitrators is to promote the finality of arbitration. Bakers Union Factory No. 326 v. ITT Continental Baking Co., Inc., 749 F.2d 350, 353 (6th Cir.1984). "The policy in favor of the finality of arbitration is but one part of a broader goal of encouraging informal, i.e., non-judicial, resolution of labor disputes." Id.
 
 
 8
 In United Paperworkers' Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987), the Supreme Court established the standard of review for courts examining arbitration awards:
 
 
 9
 To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.
 
 
 10
 Thus, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Id. "An award fails to derive its essence from the collective bargaining agreement when it conflicts with express terms of the agreement." Ficks Reed Co. v. Local Union 112, 965 F.2d 123, 125 (6th Cir.1992). Therefore, a court, even if it believes the arbitrator committed serious error, is not authorized to reject an arbitrator's construction of a collective bargaining agreement "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Misco, 484 U.S. at 38. (emphasis added).
 
 
 11
 We agree with the district court that the arbitrator's award in this case draws its essence from the collective bargaining agreement and that the arbitrator in no way acted outside the scope of his authority. The collective bargaining agreement, in Article VII, limited the company's authority to discharge employees to "just cause." The agreement, however, did not define "just cause." Article XXII authorized the Company to adopt "reasonable" work rules. Moreover, Work Rule 19 merely stated that "[r]efusal to follow orders or instructions of [sic] supervisor can result in immediate discharge." (emphasis added). Read as a whole, the collective bargaining agreement invited the arbitrator to determine whether discharge in these circumstances was reasonable, especially given that Work Rule 19 did not mandate discharge in the event of insubordination. The arbitrator found that mitigating factors excused Chapman's conduct, and that termination was not warranted, even though Chapman did refuse to follow a supervisor's instructions.
 
 
 12
 Nothing in the arbitrator's construction of the collective bargaining agreement or designation of a remedy conflicts with a provision of the collective bargaining agreement. We note that "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit...." Johnston Boiler Co. v. Local Lodge No. 893, 753 F.2d 40, 43 (6th Cir.1985) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Accordingly, a party is free to limit the arbitrator's authority to fashion a remedy by careful drafting of the collective bargaining agreement. Id. The collective bargaining agreement in this case, however, contained no limits on the authority of the arbitrator to consider the propriety of termination. As such, the arbitrator's decision drew its essence from the provisions of the agreement.
 
 
 13
 Therefore, the judgment of the district court is affirmed.